# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7456 | **DATE** | 9/4/2002 |
| **CASE TITLE** | MICHAEL KUNDRAT vs. THE CHICAGO BOARD OPTIONS EXCHANGE, | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion And Order. Defendants' joint motion to dismiss is granted in part and denied in part. PHLX's motion to dismiss counts I and III is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | SEP 0 6 2002 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| LG | courtroom deputy's initials | | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| MICHAEL KUNDRAT, ) | |
| STANLEY AWDISHO, and ) | |
| KEVIN RYAN, ) | |
| ) | **Case No. 01 C 7456** |
| Plaintiffs, ) | |
| ) | **Hon. John W. Darrah** |
| v. ) | |
| ) | |
| THE CHICAGO BOARD OPTIONS ) | |
| EXCHANGE, INC.; AMERICAN ) | |
| STOCK EXCHANGE, LLC; ) | |
| PHILADELPHIA STOCK EXCHANGE, ) | |
| INC.; PACIFIC EXCHANGE, INC.; ) | |
| CBOE LESSORS' ASSOCIATION; ) | |
| DONALD PHILLIPS; MICHAEL ) | |
| MONDRUS; and LAWRENCE BLUM; ) | |
| ) | |
| Defendants. ) | |

DOCKETED

SEP 0 6 2002

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Michael Kundrat ("Kundrat"), Stanley Awdisho ("Awdisho"), and Kevin Ryan ("Ryan") (collectively "Plaintiffs"), filed a six-count amended complaint against Defendants, the Chicago Board Options Exchange, Inc. ("CBOE"); American Stock Exchange, LLC ("AMEX"); the Philadelphia Stock Exchange, Inc. ("PHLX"), the Pacific Stock Exchange, Inc. ("PCOS") (collectively "the Exchange Parties"), CBOE Lessors' Association ("CBOELA"); Donald Phillips ("Phillips"), Michael Mondrus ("Mondrus"), and Lawrence Blum ("Blum"). The complaint alleges violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (2002), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (2002) (Count I); the Clayton Act, 15 U.S.C. § 12 *et seq.* (Counts II and IV); and breach of contract (Count III) by the Exchange Parties. The complaint also alleges

31

claims for tortious interference (Count V) against CBOE, CBOELA, Phillips, Mondrus, and Blum and violation of the Clayton Act (Count VI) against all Defendants.

The Exchange Parties and Blum move, pursuant to 15 U.S.C. § 78u-4 and Federal Rules of Civil Procedure 9(b) and 12(b)(6), to dismiss the amended complaint. PHLX also moves to dismiss Counts I and III pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3). For the reasons set forth below, the Exchange Parties and Blum's Joint Motion to Dismiss is granted in part and denied in part. PHLX's Motion to Dismiss Counts I and III is denied.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim'. . . he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For purposes of this Motion to Dismiss, the following allegations are taken as true.

At all relevant times, the Exchange Parties were registered as exchanges with the United States Securities and Exchange Commission ("SEC"). CBOE is located in Chicago, Illinois. AMEX is located in New York, New York. PHLX is located in Philadelphia, Pennsylvania. PCOS is located in San Francisco, California. CBOELA is a non-profit volunteer organization made up of CBOE members. Blum is a member of the management committee of CBOELA.

The Exchange Parties provide a marketplace for the buying and selling of stock options. The Exchange Parties guarantee performance of the counter-parties to the transactions that take place in their respective marketplaces.

The Exchange Parties quote stock option prices at which public customers can buy and sell option contracts. One of the ways they provide these price quotations is through various electronic transfer systems. These electronic transfer systems route the option price quotations through clearing firms to public customers via computer. Once the price is displayed, public customers may buy or sell the option by "clicking" on the price shown onscreen. The Exchange Parties represent to the public that when a customer "clicks" on the represented price, the transaction is executed instantaneously. After this instantaneous transaction is completed, the Exchange Parties send a confirmation notice. This "receipt" allows public customers, especially day traders, the opportunity to evaluate their positions and to determine when to sell or buy back the stock option. Plaintiffs were public customers of the Exchange Parties and received price quotations through the electronic transfer systems. On or before mid-1999 until the present time, Kundrat and Awdisho traded stock option contracts at the Exchange Parties as independent retail customers through their own trading accounts and under a power of attorney agreement to trade other accounts. Ryan has traded stock option contracts at the Exchange Parties as an independent retail customer through his own trading

accounts and under a power of attorney agreement to trade other accounts since on or before April 2000. Plaintiffs had valid account contracts with various clearing firms which permitted them to place orders for the purchase and sale of stock options at the Exchange Parties through their respective electronic trading systems.

The Exchange Parties misrepresented prices and that orders will be executed instantaneously. The Exchange Parties also refused to execute stock option transactions when Plaintiffs "clicked" on prices sent via the electronic transfer system, changed the option price quoted when Plaintiffs "clicked" on them, failed to send instantaneous "receipts" after Plaintiffs "clicked" on them, for substantial periods of time, and cancelled stock option transactions after confirming such transactions.

The CBOE circulated a "blacklist" letter to its clearing firms which allegedly falsely accused Plaintiffs of potential trading abuses. In February 2001, the CBOE attempted to bar Plaintiffs and others from the Exchange Parties' marketplaces by imposing severe reporting requirements on their respective clearing firms. The CBOELA, through Phillips, Mondrus, and Blum, used its influence with the CBOE to compel the CBOE to draft and deliver the letter to Plaintiffs' clearing firms. Upon receipt of the letter, the clearing firms terminated their contracts with Plaintiffs, who are no longer able to trade stock options.

### DISCUSSION

*PHLX's Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction*

PHLX argues that it should be dismissed due to lack of personal jurisdiction and improper venue.

Venue is proper in an action brought under the Securities Exchange Act of 1934 if a plaintiff

can meet the requirements of section 27 of the Act. Section 27 provides in pertinent part that:

> [a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district [where the act or transaction violating the Act occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district in which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (2002). Section 27 provides for nationwide service of process. This means that this Court will have personal jurisdiction over PHLX if there is a nexus between PHLX and the United States. *See Fitzsimmons v. Barton*, 589 F.2d 330, 332 (7th Cir. 1979). PHLX is located in Philadelphia, Pennsylvania. Thus, there is a nexus between PHLX and the United States, and this Court has personal jurisdiction over PHLX.

For venue to be proper, Plaintiffs must allege that (1) an act or transaction violating the Act occurred in the Northern District of Illinois or (2) PHLX is found or is an inhabitant or transacts business in the Northern District of Illinois. *See* § 78aa. Plaintiffs allege that PHLX violated the Exchange Act by refusing to execute stock option transactions and changing the price when Plaintiffs "clicked" on them, cancelling transactions after confirming them, and failing to send instantaneous "receipts" for substantial periods of time after Plaintiffs "clicked" on them. These allegations are insufficient to show that a "material or important act in furtherance of the violations occurred in this district." *Czechorski v. Executive Telecard, Ltd.*, No. 95 C 2388, 1995 WL 549946, at *3 (N.D. Ill. Sept. 8, 1995). The orders and the alleged misrepresentation by PHLX regarding those orders, i.e. that "clicking" placed the order at the price displayed on screen, occurred in this district.

The other Exchange Parties do not contest venue. Therefore, any objection to venue in this district is waived as to those defendants. *See* Fed.R.Civ.P. 12(h)(1).

Therefore, based on the foregoing, PHLX's Motion to Dismiss Count I is denied.

*Exchange Parties' Rule 12(b)(6) Motion to Dismiss*

The Exchange Parties argue that Count I should be dismissed because: (1) Plaintiffs failed to (1) plead the alleged fraud with the particularity required by 15 U.S.C. § 78u-4(b)(1), (2) and Federal Rule of Civil Procedure 9(b); (2) Plaintiffs failed to properly allege transaction or loss causation; (3) any claim about the operation of the Exchange Parties' markets is barred by the doctrine of regulatory immunity; (4) Plaintiffs lack standing to assert a claim for purchases they did not make; and (5) the Exchange Parties' alleged actions were not manipulative or deceptive.

Section 10(b) of the Securities Exchange Act of 1934 provides that:

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 provides that:

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) [t]o employ any device, scheme, or artifice to defraud[;] (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading[;] or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2002).

To plead a claim for securities fraud, Plaintiffs "must allege that the [Exchange Parties]: '(1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the

purchase or sale of securities, (5) upon which [Plaintiffs] relied, and (5) that reliance proximately caused [Plaintiffs'] injuries.'" *Fugman v. Aprogenex, Inc.*, 961 F. Supp. 1190, 1194 (N.D. Ill. 1997) (quoting *Moss v. HealthCare Compare Corp. (In re HealthCare Compare Corp. Sec. Litig.)*, 75 F.3d 276, 280 (7th Cir. 1996)). "In connection with the purchase or sale of securities" should be broadly construed and does not require "a misrepresentation about the value of a particular security in order to run afoul of the Act." *Sec. Exch. Comm'n v. Zandford*, - - U.S. - -, 122 S. Ct. 1899, 1903 (2002).

Pursuant to Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b) "This means that persons alleging fraud must state 'the who, what, when, where, and how.'" *Boyd Mach. & Repair Co. v. Am. Int'l Homes, Ltd.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990)). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997) (citations omitted).

To determine whether Count I is sufficient, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

The Private Securities Litigation and Reform Act of 1995 ("PSLRA") imposes even stricter pleading requirements for scienter in securities fraud cases. 15 U.S.C. § 78u-4(b)(2) (2002). The PSLRA provides that in securities fraud cases, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Seventh Circuit has not yet reached the issue of what averments are sufficient to give rise to a strong inference that the defendant acted with scienter, "a mental state embracing an intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). The Second and Third Circuits have held that "it remains sufficient for plaintiffs [to] plead scienter by alleging facts 'establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 533 (3d Cir. 1999) (quoting *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 n.8 (3d Cir. 1997)); *see also Press v. Chem. Inv. Servs., Corp.*, 166 F.3d 529, 538 (2d Cir. 1999). The Sixth and Eleventh Circuits have held that scienter can be alleged "by pleading facts that denote severe recklessness." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 550 (6th Cir. 2001); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir. 1999). In the Ninth Circuit, a plaintiff must plead facts giving rise to a "strong inference of deliberate recklessness." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 975 (9th Cir. 1999). "[T]his court agrees with the other courts in this District who have held that the '§ 78u-4(b)(2) adopts the Second Circuit standard but declines to bind courts to the Second Circuit's interpretation of its standard.'" *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 1998 WL 774678, at *1 (N.D. Ill. Oct. 21, 1998) (quoting *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1252 (N.D. Ill. 1997)).

Count I alleges that the Exchange Parties "repeatedly misrepresented price quotations to public customers in order to deprive the Plaintiffs and others similarly situated of profitable trades . . . on a daily basis and on thousands of occasions" with specific intent to harm the Plaintiffs by excluding Plaintiffs from the options marketplace. (Am. Compl. ¶¶ 25, 26.) Count I also alleges that the Exchange Parties (1) refused to execute transactions when Plaintiffs "clicked" on them, (2)

changed prices when Plaintiffs "clicked" on them, (3) did not send instantaneous confirmation of sales, and (4) cancelled transactions after sending confirmation. (Am. Compl. ¶ 32.) Count I also alleges that the Exchange Parties repeatedly misrepresented that orders would be executed instantaneously. (Am. Compl. ¶ 27.) Count I alleges sufficient facts establishing a motive and an opportunity to commit fraud. Count I also sufficiently alleges what misrepresentations were made, by and to whom, and when such misrepresentations were made. In short, Count I alleges facts that constitute circumstantial evidence of reckless or conscious behavior. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d at 533.

The Exchange Parties also argue that Count I should be dismissed because it does not allege transaction causation or loss causation. In a securities fraud action under Rule 10(b)(5), Plaintiffs must plead transaction causation, that is, "that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of the sale", and loss causation or "that it was the very facts about which the defendant lied which caused [Plaintiffs'] injuries." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). As was noted above, Count I alleges that the Exchange Parties changed prices when Plaintiffs "clicked" on them and misrepresented price quotations to deprive Plaintiffs of profitable trades on a daily basis. (Am. Compl. ¶¶ 25, 26, 32.) These allegations reasonably support the inference that (1) Plaintiffs would not have invested in the instrument had the Exchange Parties stated truthfully the price of the stock options and (2) that this change in the price of the stock options caused Plaintiffs' injuries. *See Caremark*, 113 F.3d at 648. Thus, Count I adequately pleads transaction causation and loss causation; and, therefore, the Exchange Parties' Motion to Dismiss is denied with respect to Count I.

The Exchange Parties argue that Counts II and IV should be dismissed because: (1) stock options are not "commodities" within the meaning of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) (2002); and (2) Counts II and IV do not allege a *prima facie* case of violation of section 2(a) of the Robinson-Patman Act.

Section 2(a) of the Robinson-Patman Act provides that:

> [i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce . . . and where the effect of such discrimination may be substantially to lessen competition . . . .

15 U.S.C. § 13(a). In order to plead a *prima facie* case of price discrimination under section 2(a), Plaintiffs must allege (1) at least two sales of commodities (2) by the same seller (3) to different purchasers (4) at different prices to persons in competition with each other (5) that have an anti-competitive effect. *See Windy City Circulating Co., Inc. v. Charles Levy Circulating Co.*, 550 F. Supp. 960, 966 (N.D. Ill. 1982). The term "commodity" as used in section 2(a) is restricted to tangible goods, such as "wares, merchandise, machinery and supplies" and cannot be a service or any other intangible good. *Baum v. Investors Diversified Servs., Inc.*, 409 F.2d 872, 875 (7th Cir. 1969).

Stock options are not tangible goods. Rather, they are options to buy stocks at some time in the future. Because stock options are not tangible goods, they are not commodities. *Baum*, 409 F.2d at 875. Therefore, section 2(a) does not apply to any transactions involving stock options.

Even if stock options were commodities and within the ambit of section 2(a), dismissal of Counts II and IV would still be appropriate because they do not state *prima facie* cases for price discrimination under section 2(a). Count II alleges that the Exchange Parties violated section 2(a)

by manipulating their electronic trading systems, cancelling trades, refusing to execute trades and changing prices for stock option contracts. (Am. Compl. ¶ 37.) Count II further alleges that this conduct is anti-competitive and that, as a result, Plaintiffs have sustained damages. (Am. Compl. ¶ 38.) Count IV alleges that the Exchange Parties violated section 2(a) by breaching contracts entered into with Plaintiffs through their electronic trading systems. However, Counts II and IV do not allege a second purchaser with whom Plaintiffs were in competition who purchased the stock options at a different price than Plaintiffs. Moreover, except for a single conclusory statement, Counts II and IV do not allege an anti-competitive effect as a result of the Exchange Parties' alleged conduct. Therefore, Counts II and IV are dismissed.

The Exchange Parties and Blum argue that Count VI should be dismissed because (1) Plaintiffs have alleged a conspiracy among entities that do not compete and with whom Plaintiffs do not compete and (2) Plaintiffs' exclusion from the marketplace would not preclude sufficient competition in the options market.

The Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1 (2002).

Count VI alleges that the CBOELA, through its agents Phillips, Mondrus, and Blum, violated § 1 by aiding and encouraging CBOE to draft a letter designed to bar Plaintiffs from the Exchange Parties' marketplaces. (Am. Compl. ¶ 62.) Count VI also alleges that the CBOE, CBOELA, Phillips, Mondrus, and Blum did this to interfere with Plaintiffs' contractual relationships, hurt Plaintiffs' reputations in the stock options community and deter clearing houses and other third parties from doing business with Plaintiffs and that this conduct is anti-competitive. (Am. Compl. ¶¶ 64, 65, 66.)

Plaintiffs' brief in opposition to the Exchange Parties and Blum's motion to dismiss indicates that Plaintiffs intend Count VI to allege a group boycott in violation of § 1.

In order to state a claim for a private antitrust action, Plaintiffs must allege "'(1) a duty recognized by the antitrust laws; (2) a violation of the antitrust laws; (3) injury to an interest protected by that antitrust laws and attributable to the antitrust violation – that is, antitrust injury; and (4) a direct link between the antitrust violation and the antitrust injury, that is to say, standing.'" *Cathedral Trading LLC v. Chicago Bd. Options Exch.*, No. 01 C 3456, 2002 WL 825758, at *5 (N.D. Ill. Apr. 30, 2002) (quoting *Greater Rockford Energy & Tech. Corp. v. Shell Oil. Co.*, 998 F.2d 391, 395 & n.7 (7th Cir. 1993)). "[T]o be per se illegal, a boycott must have two essential elements: (1) at least some of the boycotters were competitors of each other and the target, and (2) the boycott was designed to protect the boycotters from competition with the target." *Cathedral Trading*, 2002 WL 825758, at *6. Here, Plaintiffs are customers of Defendants, not competitors. Thus, the boycott could not have been designed to protect CBOE, CBOELA, Phillips, Mondrus, or Blum from competition with Plaintiffs. Therefore, Plaintiffs have not established that the alleged boycott is per se illegal, and there has been no violation of any duty recognized by the antitrust laws.

Even if the boycott is analyzed as a vertical restraint, that is, involving an agreement between participants at different levels of distribution, on trade under the Rule of Reason, Plaintiffs still cannot state a claim for violation of § 1. Under the Rule of Reason analysis, Plaintiffs must allege that the challenged restraint adversely affected competition in the relevant market. *42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 404 (7th Cir. 2002). To show that the restraint adversely affected competition in the market of options trading, Plaintiffs must allege that the CBOE, CBOELA, Phillips, Mondrus, and Blum have market power, that is, CBOE and the others "can raise

prices above a competitive level without losing [their] business." *42nd Parallel North*, 286 F.3d at

405. However, Plaintiffs have not alleged that any of the Defendants possess market power in the

stock options trading market. Therefore, based on the foregoing, Count VI is dismissed for failure

to state a claim.

The Exchange Parties argue that Count III should be dismissed because (1) there was no

contract between Plaintiffs and the Exchange Parties, (2) it is barred by the doctrine of regulatory

immunity, (3) it fails to allege a breach of an alleged contract, and (4) Plaintiffs do not adequately

allege standing to sue.

"To properly plead a cause of action for breach of contract, a plaintiff must allege (1) the

existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the

contract by the defendant; and (4) resultant injury to the plaintiff." *Interclaim Holdings Ltd. v. Ness,*

*Motley, Loadholdt, Richardson & Poole*, No. 00 C 7620, 2001 WL 1313799, at *10 (N.D. Ill. Oct.

29, 2001).

Count III alleges that the Exchange Parties, by quoting prices through their electronic transfer

systems, have offered option contracts to Plaintiffs at specified prices; Plaintiffs accepted these offers

by "clicking" on the quoted prices; the Exchange Parties breached these contracts by refusing to

execute the transactions, changing the quoted price when Plaintiffs "clicked" on them, and cancelling

transactions after sending confirmation notices; and Plaintiffs have incurred damages as a result of

the breach. (Am. Compl. ¶¶ 40, 41, 42, 43.)

Count III adequately alleges a claim for breach of contract. A price quotation, if sufficiently

detailed, may constitute an offer. *See McCarty v. Verson Allsteel Press Co.*, 89 Ill. App. 3d 498, 506

(1980). Moreover, whether a price quotation constitutes an offer is a question of fact and, therefore,

not appropriate for consideration on a motion to dismiss. *See Rush-Presbyterian St. Luke's Med. Ctr. v. Gould, Inc.*, No. 93 C 1661, 1993 WL 376163, at *2 (N.D. Ill. Sept. 22, 1993).

Furthermore, the Exchange Parties' argument that the breach of contract claim against them is barred by the doctrine of regulatory immunity because not all transactions were eligible for electronic trading under the various Exchanges' rules or that the Exchanges' rules permitted cancelling transactions or changing prices under appropriate circumstances is not persuasive. "[S]elf-regulatory organizations [such as the Exchange Parties] do not enjoy complete immunity from suits; it is only when they are acting under the aegis of the Exchange Act's delegated authority that they so qualify." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998). At this stage of the proceeding, it is unclear which transactions between Plaintiffs and the Exchange Parties were ineligible for electronic trading or whether the appropriate circumstances for cancelling a transaction or changing the price were present. Furthermore, there has been insufficient factual development to determine whether the Exchange Parties were acting "under the aegis of the Exchange Act's delegated authority" when they cancelled trades or changed prices. Therefore, the Exchange Parties' motion to dismiss is denied with respect to Count III with leave to reassert this argument at a later time.

Finally, CBOE, CBOELA and Blum argue that Count V should be dismissed because regulatory immunity and absolute privilege bar Plaintiffs' tortious interference claim.

Under Illinois law, the elements of a tortious interference with contract claim include: (1) the existence of a valid and enforceable contractual relationship, (2) the defendant's knowledge of such contractual relationship, (3) the defendant's intentional and unjustified inducement of a breach of said contractual relationship, (4) the breach by the other party caused by the defendant's conduct,

and (5) damages. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998).

Count V alleges that CBOE learned that Plaintiffs were earning substantial profits from trading; that CBOE attempted to bar Plaintiffs from the Exchange Parties' markets by imposing severe reporting requirements on Plaintiffs' clearing firms; and CBOELA, through Phillips, Mondrus, and Blum, used its influence with CBOE to compel CBOE to deliver a "blacklist" letter to Plaintiffs' clearing firms, thereby inducing the clearing firms to close Plaintiffs' accounts. (Am. Compl. ¶¶ 50, 52, 53, 54.) The "blacklist" letter accused Plaintiffs of potential trading abuses. (Am. Compl. ¶ 51.) These allegations adequately plead a tortious interference with contract claim.

CBOE, CBOELA, and Blum's argument that Count V is barred by the doctrine of regulatory immunity is unpersuasive. At this stage in the proceeding, it is unclear whether CBOE, CBOELA, and Blum were acting under the aegis of the Exchange Act's delegated authority. Therefore, their motion to dismiss is denied with respect to Count V with leave to reassert this argument at a later time.

## CONCLUSION

For the reasons stated herein, Defendants' Joint Motion to Dismiss is granted in part and denied in part. PHLX's Motion to Dismiss Counts I and III is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: _September 4, 2002_